# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 553 | **DATE** | 5/4/2004 |
| **CASE TITLE** | Werner Von Pein vs. Hedstrom Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 6/2/2004 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Plaintiff's motion (Doc 29-1) for summary judgment and motion to dismiss are denied. Ruling set for May 12, 2004 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | MAY 04 2004 | |
| | Notified counsel by telephone. | | date docketed | 41 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 5/4/2004 | |
| SCT | courtroom deputy's initials | 2004 MAY -4 AM 8:21 | date mailed notice | |
| | | Date/time received in central Clerk's Office | SCT mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAY 0 4 2004

| | |
|---|---|
| WERNER VON PEIN, | ) |
| Plaintiff/Counterdefendant, | ) |
| vs. | ) 04 C 553 |
| HEDSTROM CORPORATION, | ) |
| Defendant/Counterplaintiff. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Plaintiff Werner von Pein's ("von Pein") motion for summary judgment and motion to dismiss Defendant Hedstrom Corporation's ("Hedstrom") counterclaim. For the reasons set forth below, the motions are denied.

## BACKGROUND

Hedstrom is a manufacturer and marketer of children's toys and outdoor recreational products. In June 2000, Hedstrom retained von Pein as a temporary executive consultant for its ERO Division ("ERO"), located in Mount Prospect, Illinois. On November 1, 2000, Hedstrom hired von Pein to work full-time as ERO's Vice President and General Manager. In this position, von Pein had overall

41

responsibility for the ERO business and reported directly to Mike Johnston ("Johnston"), Hedstrom's President and CEO.

On March 14, 2002, Johnston drafted a letter (the "Severance Agreement") to von Pein that provided for severance payments in the event that von Pein's "employment be terminated for any reason other than cause." Hedstrom afforded similar severance agreements to other executives after management voiced concerns about job security. At the time it appeared that there was a possibility that Hedstrom would be sold by its investors and shareholders, an event which has yet to occur. Von Pein's Severance Agreement specified that if he was fired without "cause," he would receive one year's base salary and that Hedstrom would continue to pay his health and life insurance benefits for one year. On December 12, 2002, Johnston fired von Pein. The circumstances surrounding von Pein's termination are disputed and will be discussed below. For one month following his discharge, Hedstrom paid von Pein his salary and benefits under the Severance Agreement.

On January 13, 2003, Hedstrom informed von Pein that it was suspending his severance payments because it believed that von Pein had removed Hedstrom confidential proprietary information and was preparing to form a business venture that would compete with Hedstrom. On January 17, 2003, Hedstrom sent von Pein a Settlement Agreement and General Release ("the Non-Compete Agreement") that

offered to pay the remainder of von Pein's salary and benefits under the Severance Agreement in exchange for von Pein's returning any proprietary information and refraining from suing Hedstrom or competing with Hedstrom for three years. Von Pein refused to sign the Non-Compete Agreement.

On March 28, 2003, von Pein, who resides in Connecticut, filed the present lawsuit in the Southern District of New York, alleging breach of the Severance Agreement and violation of the Illinois Wage Payment and Collection Act ("Wage Act"), 820 ILCS 115/1 *et seq*. On May 8, 2003, Hedstrom answered von Pein's complaint and filed a counterclaim alleging breach of fiduciary duty of loyalty. On January 12, 2004, Judge Casey transferred the case to the Northern District of Illinois. Von Pein now moves for summary judgment, asking that we hold, as a matter of law, that Hedstrom breached the Severance Contract because he was not fired for "cause." Von Pein also moves to dismiss Hedstrom's counterclaim.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the nonmoving party's case." Id. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must consider the record as a whole in a light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. Id. at 255; Bay v. Cassens Transport Corp., 212 F.3d 969, 972 (7th Cir. 2000). With these considerations in mind, we now turn to the present motion.

## DISCUSSION

The primary issue for this summary judgment opinion is whether von Pein was terminated for "cause" under the Severance Agreement. Questions of contract interpretation for unambiguous contracts, and whether they are unambiguous, are matters of law for the court to determine. Tate v. Wabash Datatech, Inc., 497 N.E.2d

1342, 1345 (Ill. App. 1986). "Disputes over interpretations of 'just cause' provisions are resolvable by summary judgment where there is no genuine issue of material fact." S.J. Groves & Sons Co. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local 627, 581 F.2d 1241, 1244 (7th Cir. 1978) (note omitted). Neither party suggests, nor do we hold, that the contract at issue is ambiguous. We therefore find that absent any issue of material fact suggesting that von Pein was fired for "cause," he is entitled to the payments and benefits as provided for under the Severance Agreement's terms. The pertinent portion of the Severance Agreement reads:

> For purposes of this [agreement], "cause" shall mean your (i) conviction of a felony under state or federal criminal law; (ii) gross negligence or willful misconduct injurious to [Hedstrom] or (iii) repeated failure to follow specific directions of your immediate supervisor or of the Board of Directors.

(Pl. Ex. 4). Hedstrom claims that von Pein is not entitled to payment under the Severance Agreement due to numerous instances of willful misconduct that merited his termination. However, before we determine whether this is the case, we must first decide whether we can consider evidence unfavorable to von Pein that was unknown to Hedstrom at the time it fired von Pein but has since come to the company's attention. Hedstrom argues that we do so by adopting the "after-acquired evidence" doctrine.

The "after-acquired evidence" doctrine is an offshoot of a remedies theory resolved in McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352 (1995), where the Supreme Court held that evidence of an employee's misconduct that was not known to the employer at the time her termination but was subsequently revealed during litigation could not bar the employee's claim of age discrimination, but that the evidence could be considered in assessing the measure of damages. The doctrine has developed in federal courts to the point where in employment discrimination cases, after-acquired evidence of employee misconduct that would merit termination will cut off a back pay award at the date that the employer would have legitimately fired the employee based on the later discovered evidence of wrongdoing. See Dvorak v. Mostardi Platt Associates, Inc., 289 F.3d 479, 485-486 (7th Cir. 2002). The doctrine has also expanded in scope in some state courts (as well as district courts applying state law) to allow for after acquired-evidence of employee misconduct to facilitate a defense to breach of employment contract actions for benefits and wages lost as a result of discharge if the employer can demonstrate that it would have fired the employee had it known of the misconduct. See O'Day v. McDonnell Douglas Helicopter Co., 959 P.2d 792 (Ariz. 1998) (adopting and discussing the progression of the "after-acquired evidence" doctrine). However, among Hedstrom's proffered list of thirteen courts that

have adopted the doctrine for breach of employment contract cases, the Illinois Supreme Court is not included.

Hedstrom argues that we should resolve the following issue, on which the Illinois Supreme Court is silent, in the affirmative: whether evidence of employee misconduct, unknown to an employer at the time of a firing, can later be used to support a finding that the employee was terminated "for cause" based on his misconduct. The seminal case of Erie Railroad v. Tompkins, 304 U.S. 64, 80 (1938), mandates that this court must apply Illinois law as we believe that it would be applied if the issue were presently before the Illinois Supreme Court. State Farm Mut. Auto. Ins. Co. v. Pate, 275 F.3d 666, 669 (7th Cir. 2001). When a state Supreme Court has not decided an issue, the rulings of the state intermediate appellate courts "must be accorded great weight" and should not be disregarded by a federal district court "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Id. (quoting West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940)).

The lone Illinois appellate opinion that the parties have identified (or that we have been able to uncover) on the subject of after-acquired evidence in a breach of employment contract case is Valentino v. Hilquist, 785 N.E.2d 891 (Ill. App. 2003). In Valentino, the Illinois Appellate Court, First District, addressed the appeal by an employer who had lost at a jury trial that had found that the employer had, *inter alia*,

breached an employment contract with a former employee. Recognizing McKennon, the Valentino court firmly rejected the notion that the after-acquired evidence doctrine should apply in a common law contract action and refused to overturn the trial court's evidentiary ruling that barred evidence unknown to the employer at the time it discharged the employee. However, the portion of the Valentino opinion that addresses the after-acquired evidence doctrine is labeled "non-publishable" under Illinois Supreme Court Rule 23. As such, Valentino should not have been cited by either party in their memoranda and we are not permitted to give the opinion any precedential value or consideration. People v. Petty, 724 N.E.2d 1059, 1061 (Ill. App. 2000).

While we may not assign Valentino's unpublished portion rejecting the after-acquired evidence doctrine for breach of contract actions any precedential value as an Illinois appellate opinion, the case's subsequent procedural history allows us some insight into the Illinois Supreme Court's hypothetical view on the issue. The Valentino defendant-employer, who unsuccessfully appealed the trial court's rejection of the after-acquired evidence doctrine, twice tried to appeal the appellate court's ruling by filing separate Petitions for Leave to Appeal with the Illinois Supreme Court. On both occasions, the Illinois Supreme Court denied the defendant's petition. Valentino v. Hilquist, 792 N.E.2d 314 (June 4, 2003); 803 N.E.2d 502 (Oct. 7, 2003). The Illinois Supreme Court thus had two opportunities to hear the appeal of the Valentino

-8-

employer, where it could have heard arguments on and potentially adopted the after-acquired evidence doctrine for breach of employment contract actions. By twice chosing not to hear the Valentino appeal, as recently as seven months ago, we therefore infer that the Illinois Supreme Court would presently not adopt the after-acquired evidence doctrine under the factual circumstances of this case. As such, this opinion will only consider evidence of von Pein's alleged misconduct that was known to Hedstrom when it terminated his employment on December 12, 2002.

At issue then is whether von Pein's termination at the time he was fired was for "cause" under the Severance Agreement. Hedstrom claims that one of the reasons for von Pein's discharge was "willful misconduct injurious to the Company," which would preclude von Pein's entitlement to benefits and salary under the Severance Agreement. Courts in this district have relied on the Webster's Dictionary definition and construed the term "misconduct" in the context of an employment contract as "'mismanagement,' 'intentional wrongdoing,' or 'bad conduct' in relation to the employment." Scherer v. Rockwell Int'l Corp., 766 F. Supp. 593, 602 (N.D. Ill. 1991). Determining employee "misconduct" must be measured in the context of, and in relation to, "the normal and reasonable expectations of the employer as to job performance." Id. There are many disputed facts surrounding von Pein's termination, but one particular event bears discussion.

The specific instance of purported misconduct by von Pein, which Hedstrom CEO Johnston refers to as the "triggering event" of von Pein's discharge, involves von Pein's request for a loan from Sharon Bowerman ("Bowerman"), the Director of Human Resources for Hedstrom's ERO division.[1] During the Thanksgiving week of 2002, von Pein was vacationing in Mexico when he telephoned Bowerman at her home in Illinois. Von Pein informed Bowerman, who was his direct subordinate, that he had lost his wallet and credit cards and requested that she wire him $1,500 immediately. It is not clear whether von Pein asked Bowerman to lend him her own money or to use Hedstrom funds, but von Pein told her that she should not inform Johnston about the situation. The next morning, Bowerman spoke to Hedstrom's Comptroller, another von Pein subordinate, who arranged for a $1,575 ($1,500 plus $75 wiring fee) Hedstrom check to be issued to Bowerman, who then wired the money to von Pein.

Later that day, Bowerman met with Johnston and told him that she was troubled by what had transpired, namely that she felt she had been placed in an awkward position by her boss asking her for money while keeping the information from Johnston. Bowerman told Johnston that she was afraid Johnston had lost trust in her

---

[1] The parties are in agreement that a significant reason for von Pein's termination, which is unrelated to the Bowerman loan incident, was von Pein's unfavorable job performance. However, poor job performance would not constitute "misconduct" or a "for cause" termination under the Severance Agreement.

because she did not ask him before withdrawing company funds. Bowerman soon repaid Hedstrom the $1,575 out of her own funds, and von Pein paid back Bowerman immediately upon his return from Mexico. According to Johnston, he had been previously considering terminating von Pein for "performance issues," but that the Bowerman incident made him lose trust in von Pein and triggered his December 12, 2002, discharge.

It is unknown whether von Pein directed Bowerman to use Hedstrom funds for the emergency loan. If he did, and instructed her to keep the transaction from Johnston's attention, we believe that a reasonable jury could find this event to constitute "willful misconduct injurious" to Hedstrom as it would seriously undermine the company's trust and confidence in a senior executive such as von Pein. Especially in today's business environment, where corporate management faces increased scrutiny as to the use of company funds for personal reasons, an executive's request to a subordinate to raid the corporation's coffers for a private loan, coupled with instruction not to disclose the undertaking, could constitute willful misconduct.

Von Pein contends that he never asked Bowerman to use company funds, but rather requested that she make a personal loan. He supports this assertion by pointing out that Bowerman made a six-figure salary and would not be unduly burdened by the $1,500 outlay and that he called her at home rather than at work. However, even if this

was the case, the scenario could still lead to a jury's finding of misconduct. In DeBono v. Chicago Sun-Times, Inc., 707 F. Supp. 363 (N.D. Ill. 1989), the court applied Illinois law and found that a company's Vice President's borrowing of $3,500 from a subordinate was, in itself, misconduct that was cause for termination. The court reasoned that "[a] reasonable employer could decide that the very request for the loan is misconduct [as b]orrowing money from a subordinate could compromise one's ability to carry out his duties by interfering with his ability to supervise and/or discipline the subordinate." Id. at 367 (citation omitted). Therefore, even if von Pein had requested that Bowerman use her own money for the loan, he created a situation that could have potentially damaged von Pein's capacity to effectively direct and oversee Bowerman's work. Von Pein argues that because he repaid Bowerman immediately upon returning from Mexico, the loan event was not misconduct "injurious" to Hedstrom under the Severance Agreement. However, lack of financial or intangible damage to Hedstrom would not necessarily prevent a finding of willful misconduct injurious to Hedstrom as "it is sufficient for the employer to show that the employee was guilty of a default in duty whose natural tendency was to injure his business, and actual injury thereto need not be shown." H. Vincent Allen & Assocs., Inc. v. Weis, 379 N.E.2d 675, 772 (Ill. App. 1978).

We therefore cannot say that, as a matter of law, von Pein's inappropriate loan request to Bowerman did not constitute "willful misconduct injurious to [Hedstrom]" under the Severance Agreement. According to Hedstrom and Johnston, the loan incident was the "triggering event" for von Pein's termination as it caused Johnston to lose trust in von Pein. Von Pein contends that by paying his salary and benefits for one month, Hedstrom is foreclosed from arguing that it fired him for cause under the Severance Agreement. Hedstrom counters that the payments made to von Pein in the month following his discharge were made gratuitously due to von Pein's alleged financial problems and Hedstrom's desire to avoid a confrontational separation. While Hedstrom did not inform von Pein at the time of his termination that he was being fired for cause, a letter written one month later mentions an investigation seeking to "confirm" that Hedstrom had a basis to discharge von Pein for cause. This January 13, 2003, letter can be read as indicating that Hedstrom was seeking to corroborate or substantiate its decision to fire von Pein for cause one month earlier.

We do not suggest that there is not ample evidence indicating that Hedstrom did not reach the decision to consider von Pein ineligible for the Severance Agreement's benefits until after his firing, particularly when it learned that he was planning on competing with the company. However, Hedstrom has proffered sufficient evidence, in the form of the Bowerman loan incident, to create a genuine issue of fact such that

-13-

a reasonable jury could find that von Pein's termination was for "cause" under the Severance Agreement. As such, summary judgment is inappropriate, and von Pein's present request for attorney's fees is premature. We also deny von Pein's request to dismiss Hedstrom's counterclaim as Hedstrom has sufficiently pleaded breach of fiduciary duty of loyalty to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Veco Corp. v. Babcock, 611 N.E.2d 1054, 1059 (Ill. App. 1993) (setting forth components of a corporate executive's fiduciary duty of loyalty).

## CONCLUSION

Based on the foregoing analysis, von Pein's motion for summary judgment and motion to dismiss are denied.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: MAY - 4 2004